# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID J. KORDEK, | ) |
| Plaintiff, | ) |
| | ) 06 C 2216 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| UNITED AGRI PRODUCTS, INC., | ) |
| f/k/a TREKKER CHEMICAL | ) Magistrate Judge Michael T. Mason |
| COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court is plaintiff's motion to quash subpoena, or in the alternative, for a protective order. This matter was referred to this Court by Judge Gettleman in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1.

On February 7, 2007, defendant issued a subpoena to plaintiff's counsel and served plaintiff with defendants' second set of requests for production. Both the subpoena and the second set of production requests sought plaintiff's counsel's files regarding consultations with plaintiff between November 2003 and March 14, 2004. Plaintiff asks this Court to quash the subpoena, or in the alternative, to enter a protective order requiring plaintiff's counsel to turn over his files to the Court for an *in camera* inspection. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

This case arises out of alleged exposure to carcinogenic products while plaintiff, a volunteer firefighter, responded to a fire at defendant's chemical plant. The fire at

defendant's plant occurred on October 9, 1990.  Plaintiff was diagnosed with bladder cancer in November 2003.  Shortly after discovering he had bladder cancer, plaintiff consulted with the law firm of Sullivan, Hincks & Conway ("plaintiff's counsel").  In late November or early December 2003, plaintiff retained the firm to represent him in connection with a medical malpractice action relating to his physician's failure to properly diagnose plaintiff's cancer.

Plaintiff filed this action against the defendant in the Circuit Court of Cook County, Illinois on March 14, 2006.[1]  In the complaint, plaintiff alleged that exposure to chemicals or other carcinogenic products at defendant's plant caused him to develop bladder cancer.  Plaintiff filed his complaint approximately two years and four months after he discovered he had bladder cancer.  However, plaintiff specifically invoked the discovery rule in his complaint.  In particular, plaintiff alleged that prior to October 2005, he had no reason to believe that his exposure to the carcinogenic products may have caused his cancer.  Plaintiff also alleged that in or about October 2005, plaintiff was informed by his physician that his particular form of cancer was due to exposure to carcinogenic products like those maintained at defendant's plant.

Because plaintiff invoked the discovery rule, defendant issued several requests for admission and an interrogatory in order to determine when plaintiff discovered the cause of his injury. In plaintiff's supplemental response to defendant's requests for admissions, plaintiff stated that,

> [he] never considered whether his bladder cancer could have been caused by exposure to chemicals, products or other substances at the

---

[1] The action was removed to federal court in April 2006.

2

>Trekker facility until after he met with Susan (Cunefare) Fisher in late 2005 and she informed him that her deceased husband's physician had made a connection between her husband's cancer and the chemical exposure at the Trekker plant.

Plaintiff further stated that,

>[his] first discussion with anyone during which he even considered the possibility that his bladder cancer could have been caused by exposure to chemicals, products or other substances was his initial discussion with Susan (Cunefare) Fisher in late 2005.

In his answers to defendant's first set of interrogatories, plaintiff explained that he met with Susan (Cunefare) Fisher in October 2005 and discovered that her late husband, the assistant chief of the Mendota Fire Department at the time of the fire at defendant's plant, had died of cancer. Ms. Fisher informed plaintiff that certain doctors had linked her husband's death to exposure to chemicals at defendant's plant. Plaintiff gave copies of materials received from Ms. Fisher to his oncologist in November 2005 and the oncologist confirmed that plaintiff's cancer was also caused by exposure to chemicals during the fire at defendant's plant.

Despite plaintiff's repeated claim that he never spoke with anyone about whether his exposure to chemicals at defendant's plant could have caused his cancer prior to late 2005, defendant presented conflicting evidence in the form of an affidavit from Dennis J. Rutishauer. Mr. Rutishauer is the current Chief of the Mendota Fire Department in Mendota, Illinois. He has worked for the fire department full time since 1993. Mr. Rutishauer, along with plaintiff and Dale Cunefare, fought the fire at defendant's plant on October 9, 1990. In his affidavit, Mr. Rutishauer stated that upon learning that plaintiff had bladder cancer, he visited plaintiff in the hospital in Rockford, Illinois. During that visit, plaintiff "raised the issue of whether his cancer was caused by

3

his claimed exposure to smoke or chemicals at 'Trekker' on October 9, 1990." Mr. Rutishauer could not remember the exact date of the visit. However, the visit must have occurred in either November or December of 2003, while plaintiff was a patient at the Rockford Memorial Hospital. Indeed, plaintiff admitted that he was not a patient at Rockford Memorial Hospital at any time other than between November 4 - November 16, 2003 and November 30 - December 6, 2003.

**ANALYSIS**

This is a diversity case and therefore, Illinois law supplies the applicable limitations period. *Kumpfer v. Shiley, Inc.*, 741 F. Supp. 738, 739 (N.D. Ill. 1990). Under Illinois law, an action for damages for injuries to the person must be commenced within two years from the date that the cause of action accrues. 735 ILCS 5/13-202. Pursuant to the common law discovery rule, the statute of limitations begins to run when a party knows or reasonably should know that an injury has occurred and that it was wrongfully caused. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 52 Ill. Dec. 1, 421 N.E.2d 864 (1981). At that point, the party is under an obligation to inquire further to determine whether an actionable wrong was committed. *Id.* In other words, the statute of limitations begins to run when a reasonable person possesses sufficient information to be put on inquiry to determine whether a cause of action exists. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415-16, 58 Ill. Dec. 725, 430 N.E.2d 976 (1982).

Here, plaintiff invoked the discovery rule in his complaint. As a result, defendant seeks plaintiff's counsel's files in order to determine when plaintiff learned of his injury or rather, when plaintiff possessed sufficient information to be put on inquiry to determine whether a cause of action against the defendant existed. Plaintiff asks this

Court to quash the subpoena defendant issued to his law firm, or in the alternative, to enter a protective order requiring plaintiff's counsel to turn over his files to the Court for an *in camera* inspection. Plaintiff argues that he never put his confidential communications with his attorneys at issue in this case. Plaintiff further claims that he has affirmatively explained his invocation of the discovery rule in response to four different discovery requests from defendant and nothing in his discovery responses refers to confidential communications with his attorneys.

However, plaintiff admits that he consulted with the law firm in late November or early December 2003, more than two years before he filed his complaint. Defendant argues that plaintiff has waived the attorney-client privilege with respect to plaintiff's counsel's files regarding consultations with the plaintiff between November 2003 and March 14, 2004.[2] In particular, defendant argues that plaintiff waived the right to assert any privilege protecting the documents by specifically invoking the discovery rule in his complaint.

Defendant relies on *Lama v. Preskill*, 353 Ill. App. 3d 300, 818 N.E.2d 443 (2nd Dist. 2004) to support its claim that plaintiff waived the attorney-client privilege. In *Lama*, the plaintiff filed a medical malpractice action against her surgeon more than two years after the March 23, 1999 surgery that allegedly caused her injury. *Id.* at 301. In her complaint, the plaintiff alleged that she first became aware of the defendant's negligence on June 28, 1999. *Id.* at 302. However, three days after the surgery, plaintiff requested her medical records and four days after the surgery, plaintiff's

---

[2] March 14, 2004 is exactly two years prior to the date plaintiff filed his complaint.

husband met with an attorney on plaintiff's behalf. *Id.* The defendant in *Lama* argued that by alleging in her complaint that she did not discover her injury until June 1999, plaintiff waived the attorney-client privilege as to confidential communications regarding when she knew she was injured. *Lama*, 353 Ill. App. 3d at 305. The *Lama* court noted that the attorney-client privilege can be waived and that waiver can be express or implied. *Id.* The court stated:

> The privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation. In other words, an implied waiver occurs where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications. This type of waiver is referred to as an "at issue" waiver.

*Id.* (citations omitted).

The plaintiff in *Lama* argued that the defendant raised the issue of when plaintiff knew of her injury by asserting the affirmative defense that the complaint was untimely. *Id.* The court disagreed and stated the following:

> In her complaint, anticipating that timeliness would be an issue, plaintiff alleged that the limitations period was tolled because she first learned of her injury in June 1999. Consequently, at the onset of the lawsuit, plaintiff raised the issue of whether she knew or should have known of her injury prior to the end of the limitations period. As a result, plaintiff voluntarily injected into the case the factual and legal issues of when she learned of her injury. She thus waived any attorney-client privilege regarding her [husband's] communications with [her attorney].

*Id.* at 306. The Appellate Court found that the defendant was entitled to plaintiff's attorney's documents relating to when plaintiff learned of her injury. *Id.* at 306-307.

In reaching its decision, the *Lama* court relied on *Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997). There, the plaintiff filed suit against the defendant in 1997, alleging that the defendant violated the

6

Franchise Disclosure Act of 1987 ("the Act") by terminating its franchise in 1995. *Id.* at 271. A lawsuit for a violation of the Act must be filed within one year from when a party becomes aware of the violation. *Id.* at 273. The plaintiff alleged that it was not until it met with its current legal counsel in 1997 that it discovered that its corporation was a franchise under the Act and that the defendant's action violated the Act. *Id.* at 271. However, in its answers to interrogatories, plaintiff admitted that it met with its former legal counsel in 1995. *Id.*

The defendant asked the court to order plaintiff's former law firm to testify about communications with plaintiff concerning the franchise termination. *Id.* Plaintiff objected based on the attorney-client privilege. *Id.* The court found that, by trying to defeat the limitations period, the plaintiff had put at issue the communications and advice it received from its prior attorney. *Id.* at 275. Thus, the court held that the plaintiff had waived the attorney-client privilege for those communications. *Id.* Accordingly, the court ordered the plaintiff's prior attorney to testify at a deposition about communications with the plaintiff concerning the alleged termination from the time of plaintiff's termination until one year from that date. *Id.* at 276.

Like the plaintiffs in *Lama* and *Pyramid Controls*, here, the plaintiff specifically invoked the discovery rule in his complaint. He alleged that in October 2005, he was informed by his physician that his particular form of cancer was due to exposure to carcinogenic products like those maintained at defendant's plant. Plaintiff also alleged that prior to October 2005, he had no reason to believe that his exposure to the carcinogenic products may have caused his cancer. Based on these allegations, at the onset of the lawsuit, plaintiff raised the issue of whether he knew or should have known

7

of his injury and its cause prior to the end of the limitations period. *Lama*, 353 Ill. App. 3d at 306. Consequently, plaintiff voluntarily injected into the case the factual and legal issues of when he learned of his injury and its cause. *Id.* In doing so, plaintiff put at issue the communications and advice he received from his attorney between the time of their first meeting in November 2003 and March 14, 2004, two years before plaintiff filed his complaint. *Id.*; *Pyramid Controls*, 176 F.R.D. at 275. Accordingly, this Court finds that plaintiff waived the attorney-client privilege with respect to those communications.

In his reply brief, plaintiff attempts to distinguish *Lama* and *Pyramid Controls*. Simply put, plaintiff's arguments in this regard are not persuasive. Likewise, we are unmoved by plaintiff's reliance on *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001), *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004) and *Quality Croutons, Inc. v. George Weston Bakeries, Inc.*, 2006 U.S. Dist. LEXIS 60715, *11-12 (N.D. Ill. 2006). This Court recognizes that the recent trend in the Northern District of Illinois deviates somewhat from *Pyramid Controls*. Indeed, courts in this district have held that an at-issue "waiver of the attorney-client privilege does not occur simply by the assertion of a claim or defense; rather, to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, document or information to which the privilege attaches." *Beneficial Franchise,* 205 F.R.D. at 216-17; *Dexia Credit*, 231 F.R.D. at 275; *Quality Croutons*, 2006 U.S. Dist. LEXIS 60715 at *11. First, this Court is not bound by these decisions. *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (recognizing that district court decisions have no weight as precedents, no authority). Second, each one of these cases is distinguishable from the case at hand. *Beneficial Franchise* was a patent case

8

decided under federal law. Furthermore, while *Dexia Credit* and *Quality Croutons* were decided under Illinois law, neither case involved the discovery rule.

Even more significant, however, is the fact that none of these cases addresses the Appellate Court of Illinois, Second District's opinion in *Lama*. As a court sitting in diversity, this Court is required to apply Illinois law and attempt to predict how the Illinois Supreme Court would decide the issue presented here. *Allen v. Transamerica Insurance Co.*, 128 F.3d 462, 466 (7th Cir. 1997). In the absence of authoritative Illinois Supreme Court rulings on the issue at hand, "decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.* This Court is not convinced that the factually distinguishable cases relied on by the plaintiff amount to "persuasive indications" that the Illinois Supreme Court would decide the waiver issue differently in a discovery rule case.[3] Because *Lama* is on point and because there are no authoritative Illinois Supreme Court decisions addressing waiver of the attorney-client privilege where the plaintiff has invoked the discovery rule, this Court is obligated to follow the Illinois Appellate Court's finding in *Lama*. *Id.*

Finally, plaintiff argues that *Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 2005 U.S. Dist. LEXIS 14254 (N.D. Ill. 2005) represents the most recent evolution in the court's treatment of the "at issue" waiver. This Court disagrees. *Allmerica* involved the question of whether certain trading restrictions were imposed by

---

[3] This Court's opinion is limited to the specific facts and circumstances before us - that is, the question of waiver of the attorney-client privilege where the plaintiff has invoked the discovery rule. We express no opinion as to how the Illinois Supreme Court would decide this issue under circumstances that do not involve the discovery rule.

the defendant in violation of the implied covenant of good faith and fair dealing. Plaintiff alleged that Allmerica imposed the trading restrictions in bad faith. Allmerica denied this allegation. As a result, plaintiff sought to discover communications between Allmerica's executives and its in-house counsel leading up to adoption of the trading restrictions. Allmerica claimed that such communications were protected by the attorney-client privilege.

Plaintiff argued that Allmerica waived the attorney-client privilege. According to plaintiff, Allmerica was relying on contractual provisions that permitted it to impose the trading restrictions but only if Allmerica was exercising its contractual discretion in good faith. Because Allmerica was relying on those contractual provisions, plaintiff argued that Allmerica was necessarily raising the issue of good faith and waiving its attorney-client privilege by placing its good faith "at issue." The court disagreed. The court held that "by denying that it acted in bad faith, [Allmerica] has done nothing to waive the attorney-client privilege concerning communications which might be relevant to the issue of bad faith."

The *Allmerica* court was not persuaded by plaintiff's reliance on *Lama*. To the contrary, the court noted that there was a dissenting opinion by Justice Bowman in *Lama*, "which we think is in line with what the Illinois Supreme Court would hold if it were presented with the question." The court quoted the following passage from the *Lama* dissent:

> The case at bar is not a situation where the plaintiff has taken the affirmative step of placing the advice of her former attorney at issue in order to assert a claim or defense. Rather, it is defendant who seeks to discover plaintiff's husband's communications with Carden [the attorney] in order to disprove plaintiff's claim. Because plaintiff, as privilege holder,

10

> is not attempting to prove her claim (or defense) by relying upon these privileged communications in order to prevail, she has not waived any attorney-client privilege with Carden.

Plaintiff relies heavily on the fact that the *Allmerica* court rejected the majority opinion in *Lama* in favor of the dissent's reasoning in that case. However, once again, we are not bound by the district court's decision in *Allmerica*. *Anderson*, 72 F.3d at 525. Moreover, *Allmerica* is distinguishable because it did not involve the discovery rule. The defendant in *Allmerica* did not put its good faith "at issue" simply by denying plaintiff's allegation that it acted in bad faith. In contrast, here, the plaintiff voluntarily raised the issue of when he learned of his injury and its cause by invoking the discovery rule.

As discussed above, plaintiff alleged that he had no reason to believe that his exposure to carcinogenic products at the defendant's plant may have caused his cancer prior to October 2005. At the same time, it is clear that plaintiff consulted with his attorneys about his medical condition as early as November 2003. By invoking the discovery rule in his complaint and voluntarily raising the issue of when he knew or should have known of his injury and its cause, plaintiff put at issue the communications and advice he received from his attorneys prior to filing his complaint. Accordingly, this Court finds that plaintiff waived the attorney-client privilege with respect to communications with his attorneys between November 2003 and March 14, 2004.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion to quash subpoena, or in the alternative, for a protective order is denied. It is so ordered.

ENTER:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:        April 16, 2007**